Case number 13-2221, People v. Osiris-Avila-Briones Good morning. Will the attorneys who are going to make a presentation today please approach the podium there and state your name and the party you represent. Joshua Bernstein for Osiris-Avila-Briones, the appellant. And Mary Boland on behalf of the people. Thank you. We've scheduled 30 minutes for this case. We have a busy schedule. We're going to try to, you know, our goal is to stick with that. The time will be divided equally, 15 minutes apiece, and Mr. Bernstein may reserve some time for your rebuttal. Thank you, Your Honor. You may proceed. I'm sorry. Thank you, Your Honor. May it please the court, counsel. As I said, my name is Joshua Bernstein and I represent the appellant, Osiris-Avila-Briones, in this case. I'd like to address a couple of issues very quickly and then answer any questions you may have on this. And I think the threshold issue that needs to be addressed is the state's argument regarding stare decisis. As we noted in our briefs, there's nothing barring this court's review of this case because right now there is no definitive ruling from the Illinois Supreme Court that addresses the statute under which Mr. Avila-Briones must register. And therefore, what we're really looking for here is a definitive ruling that analyzes the statute in light of the Kennedy v. Mendoza-Martinez analysis. Specifically, with respect to that statute, if you look at the 1998 statute or the 1987 SOAR statute, the 1987 statute was in effect in 1991 when People v. Adams was decided. And in that case, the Illinois Supreme Court did not employ the Mendoza-Martinez test. Rather, they employed the test in Trott v. Dulles, which simply looks at the intent of the court to determine whether a statute is punitive. At the time, the statute was not punitive. It was a regulatory statute. And therefore, there was no need to look past the intent of the legislature. If you look at the Malchow case, which analyzed the 1998 statute, with respect to SOAR, the Illinois Supreme Court simply said, we decided in Adams that it's okay to have sex offenders register. And it's okay to have sex offenders register. It's not the registry itself that we're attacking, it's the elements that have been added to the registry, the statutes that have been enacted and amended that are concomitant to the registry itself. So that's why we challenge the restriction on being in a park. That's why we challenge the restriction on being in a school. That's why we are challenging the requirement that a party who has to register under SOAR must renew his or her driver's license every year. Malchow. Counsel, do you have a standing problem? I don't understand, Your Honor. Is there an issue with constitutional standing in this case? I mean, he's been convicted of a crime. There's going to be some things that automatically attach. But we're also talking about some other laws that are not necessarily part of the sentence. They go along with his having been convicted, but they weren't imposed by the trial court. Is that standing right at this stage on direct appeal of his criminal conviction to challenge those statutes? Yes, Your Honor. And I think that kind of gets to this idea in the state's brief that this is some kind of hypothetical bundle of annoyances for my client. The actions of every person on the sex offender registry, every child sex offender, their actions are restricted by those statutes. Whether he has been arrested or whether anyone has been arrested or convicted of those statutes, they nonetheless act as a burden, as a restraint, and as a restriction. But aren't these other acts which you raised, the constitutional questions about really collateral, and shouldn't they be more properly brought in a civil action? I don't understand, Your Honor. Well, he was sentenced, so we have a sentence to it, and we may properly review the appropriateness of the sentence, whether or not it's cruel and unusual or volatile about the Eighth Amendment. But these collateral statutes which you question the constitutionality of, are they properly before this Court? I believe they are, Your Honor. And I believe they're only collateral in the sense that they are not included in the SORA itself. Nonetheless, they restrict what my client can do, and they require my client to take actions that he would not otherwise have to take if he hadn't been put on the sex offender registry. With respect to collateral versus direct consequences, the essence of our argument is that this accumulation of restrictions and burdens has turned what might have been a collateral, what might have been a regulatory set of statutes, into a straight-up punitive regime that needs to be analyzed, to which the due process rights of a criminal defendant need to attach. And that's really the essence of our argument. So with respect to standing, he's bound by it, whether or not he's... Counsel, if I were convicted of a felony, let's say perjury, okay, if I were convicted of perjury, I would not be allowed to possess a weapon, right? There's a UUWF statute. So on direct appeal of my perjury conviction, could I challenge the constitutionality of the UUWF statute? Well, Your Honor... Because it automatically attaches by operation of law, right? Should that case ever cross my desk, I would definitely make that argument. Okay. And I'll tell you, and I think it's set up in the briefs, this is a comprehensive scheme here. And I don't think that we should give the legislature a pass on constitutionality merely because they sprinkle something in the Motor Vehicle Code and they sprinkle something in the Corrections Code and then they put some things in SORA. In fact, it was in Smith v. Doe, I believe, with the United States Supreme Court, and I apologize, it may have been in one of the concurrences, where they said it doesn't matter where the statute is located in the code, it's the effect of the statute. I don't think we're disagreeing with you on that. Okay. I'm glad we agree. So basically what we're asking you to do here is take a look at this statute under the Kennedy v. Mendoza-Martinez factors and look at these restrictions. A child sex offender like Mr. Avila-Briones is not permitted in this building. A child sex offender like Mr. Avila-Briones is not permitted to take his child to the park. Violation of either of those restrictions is a felony. He has to renew his license every year. He has to pay $100 for the privilege of having the government monitor him for the rest of his life. And you know that this case was brought by Mr. Avila-Briones, who was convicted for having sex with his 16-year-old girlfriend who bore his child at whose house he lived with her parents and for whose father he worked. As I said, we are not attacking the validity of sex offender registration per se. There are people who should be monitored. The question is, does this statute satisfy due process, satisfy proportionate penalties such that it can be employed as it is set out? Now, I know Your Honors, we're on a tight schedule here, and I don't know if you have any other questions. If not, I'd like to... Are you really attacking the one-size-fits-all aspect of the Registration Act when you look at the facts of this case, as opposed to some worse-facts situations regarding restrictions which ought to be imposed on individuals? We are, Your Honor, and this is still a facial attack. The fact that our client happens to be someone for whom this is a particularly egregious statute doesn't have anything to do with its facial constitutionality. And with respect to relief, I would just like to point out to Your Honors that I think you could fashion relief in the form of some sort of due process hearing, like the one that's in Section 3-5 of the SORA for juvenile offenders. We put in our reply brief, we discussed this issue. The unconstitutionality of this statute can very easily be corrected by imposing a mechanism like that. It doesn't have to be... You don't have to throw out the baby with the bathwater. There's a very easy solution, and that's what we're asking you for. We're asking you for a ruling that this SORA statutory scheme, that these statutes taken together, violate the due process clause of the United States and Illinois Constitutions, and that there is a mechanism that you can put in place in the form of something like a 3-5 hearing. So unless you have any other questions, Your Honor, I'd like to reserve a couple minutes for rebuttal. Absolutely. Thank you. Thank you. Ms. Boland? Once again, Mary Boland on behalf of the people. Three preliminary points. First of all, the underlying facts of this case are irrelevant. The Illinois Supreme Court said so just last month in In Re Ma, a case that I cited as additional authority that came down November 4th. That case involved a juvenile, and much of the amicus material and respondent's brief talk all about the fairness of the life history, all of this other information as to whether that person should be registered on the violent offender registry. It's a similar registry to the sex offender registry. And the court said unanimously it's irrelevant. It's a categorical decision by the legislature. You're going to register if you're adjudicated for certain offenses. You're going to register for SORA if you are convicted of certain offenses. So this business that he can choose a minor, that he can impregnate a minor, and somehow he wants to get credit for that, he wants sympathy for that, that is not appropriate under Illinois law. So that's the first point. The second point is he admits he's not attacking the registration statute. And that is the statute that's at issue in this direct appeal. That's the only statute that's at issue. And the only reason that he's allowed to attack it is because the Supreme Court has already said that one can attack SORA's application upon the conviction in a direct appeal. So he's allowed to attack that one statute. But what he's doing here is he's bundling certain selective other statutes and then creating his own scheme. That's like saying, well, I have a driver's license, so I can attack the entire motor vehicle code because, you know, it affects everybody else's driver's licenses, and therefore I have standing. He doesn't have standing. There are no facts in this record. So isn't he injured by every one of these statutes? He's not injured. He has never been charged by 9-3 and 9-4, which, by the way, don't depend on SORA for their existence. They have their own definitions of who is covered by those statutes, and they are criminal statutes. I'm sorry, which ones are 9-3 and 9-4? Oh, I'm sorry, 9-3 and 9-4 are the bands and parks and playgrounds, those types of things, the location restrictions. All of those restrictions automatically apply to him, don't they? And if he violates the law and he's charged with that and he's convicted of that, he'll have standing to challenge every one of those statutes. He will not have standing ever to challenge that law. He will not have standing in this case. Unless and until he is prosecuted and convicted. Is that the law of standing? He has no standing in this case. He has been convicted of aggravated criminal sexual abuse 10 times, and he is facing SORA. SORA automatically attaches to him as of now. SORA does. The others do not automatically attach. If you choose not to go into parks and playgrounds and put yourself in proximity of children, you will never be charged with those statutes. You're not at risk of being charged with those statutes simply because SORA requires you to register. The driver's license statute, that's just a rational requirement that the law enforcement monitoring function is increasing its efficiency if a sex offender registers annually as opposed to every four years because we want to make sure that their appearance remains the same. There's a lot of legitimate rational reasons for that. That's a civil regulation. There's no facts in this record that even has a driver's license or that it's being applied to him in any way. So there's that. And then finally, the name change. Petitioning for a name change. That also applies to convicted felons. We don't want people changing their names and then presenting themselves as not being sex offenders to the public when we know they're sex offenders putting people at risk. So that's the second point, is you can't bundle the way he has bundled and ask this court to make a scheme decision. And then finally, he's making a facial attack, but he doesn't make any effort to determine that this statute could not be applied properly to someone like John Wayne Gacy because that is what is required for his facial attack to succeed, that the worst and most heinous child sex offenders, murderers, would not be subject to SORA. And that's, of course, why that challenge should fail at the threshold. With regard to the punitive nature, it's fascinating. This case is fascinating because the defendant says there's no case out there, at least no Illinois case. Well, SORA or its precursor has been in existence since the 1980s. Adams, 1991, Malchow, 2000, J.W., 2003, Konecki, 2009, last month, Inouye, M.A. that used SORA as a comparator for the violent offender registry, all have looked at this statute. Every single one of those times, the Illinois Supreme Court has found a constitutional. This court has found that there is no punitive effect. It has not been transformed. Just last year in Frederick's, if you remember, Frederick's was the individual who was a sex offender, did 10 years on the registry, came off the registry, then committed a serious drug offense, and therefore was subject to lifetime registration. And the argument there was that it has been transformed into a punitive statute. This court said no. That's last year. Defendant would have you ignore all of that and look to sister states construing their own statutes at their own standards that do not follow Smith v. Doe, which is what Illinois has followed consistently, the majority. He wants you to look at the dissent. He wants you to apply the standards that those states apply in their statutory construction analysis and somehow come to the conclusion in those ex post facto cases when ex post facto issues aren't even relevant to this case. This court does not have to ignore its prior rulings, which can't ignore the prior rulings of the Illinois Supreme Court. We're not operating on a blank slate here. And we have ample law that says that there is no constitutional insufficiency in the sex offender registration statute as it exists. Substantive due process has been an issue prior, in prior cases before the Illinois Supreme Court. Procedural due process has been an issue. Konetsky in 2009, procedural due process. Categorical registration. And by the way, in J.W. in 2003, lifetime registration without an early off the registry was also upheld as constitutional against a due process challenge. So all of these questions that are being raised here have already been answered. And I've gone over in much more detail in my brief, but I'm happy to answer any question that you may have this morning. Thank you so much. We're asking that this Court affirm the constitutionality of the Sex Offender Registration Act. Thank you. Mr. Bernstein. Very briefly, Your Honors. We agree with the State, but the facts here are irrelevant. This statute cannot be constitutionally applied to anybody on the sex offender registry. And the infirmity lies in the lack of a means by which a person can petition to get off that registry. With respect to the counsel's argument about Adams and Malchow and Konetsky and Fredericks and all these other cases, as we set out in detail in our briefs, there's been a hiccup in the analytical structure in this case law, such that, with all due respect, in Fredericks, this Court read Malchow as saying that the Kennedy v. Mendoza-Martinez test affirmed the constitutionality of  It's very clear, in Malchow, the Court cited Adams, the 1991 case which rejected Kennedy v. Mendoza-Martinez, and just said it's okay to have people register with respect to the registry. They went into a detailed analysis of the notification statute. And since that point, somehow in our case law, this detailed analysis of the notification statute is being applied to the registration statute. Yes, they kind of dovetail together. You can't have one without the other. I don't know what the real logic is behind it. But the fact is, no court has employed the Kennedy v. Mendoza-Martinez test in the way it's used in Smith v. Doe, whether you believe in clearest proof or not. I mean, I don't know what the clearest proof standard is, other than you know it when you see it. And if you don't see it in this case, I don't understand where you see it. This is piled on restrictions, obligations, piled on more restrictions and more obligations. So respectfully, and with respect to counsel, and to the Illinois Supreme Court, you cannot use the Adams analysis. You cannot rely on Malchow. I believe Frederick's was wrongly decided because it cited the wrong analysis of the right analysis of the wrong statute. And the issues which determine the constitutionality of notification are very different than the issues which determine the constitutionality of the burdens, of the affirmative burdens of registration. And this goes to M.A. as well. You know, M.A. in dicta, they certainly said that the registration scheme is constitutional, but they also cited Representative Ritchie's statements in the discussion of the statute in question, where he talks about a continuing crackdown on sex offenders, and in the next paragraph they pretty much admit that this is an onerous burden. And that's the Illinois Supreme Court. I understand where the state's coming from, and I understand the bind that you're in, because it appears that stare decisis binds you in a decision. That is not the case. The state is wrong. If you read the cases closely, you see the analysis that has crept into our case law is incorrect. And with that, unless you have any further questions, thank you for your time, and we ask that you find the statute unconstitutional. Thank you. The case was well argued and well briefed. We will issue a decision in due course. Thank you.